UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

TRUSTEE KELLY L. WEST,       :    Case No. 3:20-cv-382

       Plaintiffs,          :

vs.                 :    Magistrate Judge Peter B. Silvain, Jr.
                  :    (by full consent of the parties)

DEAN HEIMERMANN, *et al.*,    :

       Defendant.         :

## ORDER GRANTING DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT ON LIABILITY

This matter is presently before the Court on Defendants' Motion for Summary Judgment on Liability (Doc. #22), Defendants' Memorandum in Support of Defendants' Motion for Summary Judgment on Liability (Doc. #23), Defendants' Declaration of Jacob R. Sundelius in Support of Defendants' Motion for Summary Judgment (Doc. #26) (collectively, "Motion for Summary Judgment"), Memorandum of Plaintiff Opposing Defendants' Motion for Summary Judgment on Liability (Doc. #38), and Defendants' Reply Memorandum in Support of the Motion for Summary Judgment (Doc. #44).

## I.      BACKGROUND[1]

The underlying dispute in this case involves the sale of four Pratt-Whitney PT6-20 turbine aircraft engine cores, a turbine hub, compressor blades, and other miscellaneous parts (collectively,

---

[1] For purposes of resolving the Motion, the recitation in the "Background" section includes undisputed facts and otherwise assumes the evidence of the non-moving party (here, Plaintiff) as true and draws all reasonable inferences in the nonmoving party's favor, as is appropriate at this stage. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505 (1986); *Tolan v. Cotton*, 572 U.S. 650, 660, 134 S. Ct. 1861 (2014).

"the Engines") by James R. West ("J.R. West") that occurred on or about November 16, 2018.[2] Prior to the sale, the Engines were assets belonging to Skydive Greene County, Ohio, Inc., a recreational skydiving training center located in Greene County, Ohio. (Doc. #38-14, *PageID* #266). In turn, Skydive Greene County, Inc. was owned by J.R. West's Revocable Trust Agreement Dated May 4, 1985 and operated by J.R. West as trustee. *Id*. at 266. After undergoing surgery for his fractured femur in January 2017, J.R. West started to experience some mental difficulties and began to cede some of his business responsibilities to his daughter, Plaintiff Kelly L. West ("Plaintiff"). *Id*. at 266-67.

On March 30, 2018, J. R. West executed the Amendment to the J.R. West Revocable Trust Agreement Dated May 4, 1985 and As Amended and Restated September 26, 2013 ("2018 Trust"). (Doc. #26-2, *PageID* #104). The 2018 Trust clarified the terms under which it should be administered both before and after J.R. West's death. *Id*. at 104-108. For instance, during J.R. West's lifetime, the trustee was obligated to, among other things, invest and manage the trust assets and to distribute the net income profits to J.R. West and his wife, Amalia West. *Id*. at 104. The 2018 Trust also stated that "[p]rovided the Grantor [J.R. West] is not under a disability, Grantor [J.R. West] shall have the right to withdraw any property in the trust estate at any time and from time to time." *Id*. at 105. The 2018 Trust further outlined the terms in which it should be operated following J.R. West's death, including that all of the trust assets be bequeathed to Plaintiff, to the exclusion of J.R. and Amalia West's other children and lineal descendants. *Id*. at 105-06.

---

[2] There appears to be some inconsistency as to whether the transaction in dispute occurred on November 16, 2018 or November 18, 2018. Both Plaintiff's Complaint and Defendants' Motion for Summary Judgment indicate that the relevant date was November 18, 2018, while Plaintiff's Affidavit and her Memorandum in Opposition to Defendants' Motion for Summary Judgment indicate that it occurred on November 16, 2018. (Compare Doc. #1, *PageID* #4 and Doc. #23, *PageID* #59 with Doc. #38, *PageID* #241 and Doc. #38-14, *PageID* #268). The parties do not allege, nor does this Court find, that the difference between these dates is material. Therefore, for purposes of consistency, the Court will refer to November 16, 2018 as the relevant date for the transaction between J.R. West and Defendants.

That same day, J.R. West resigned as trustee of the 2018 Trust and nominated Plaintiff as his successor, which she immediately accepted on March 30, 2018. *Id*. at 109. Finally, by separate agreement on the same date, J.R. and Amalia West assigned all of their rights, title, and interests to all of their tangible personal property and equipment related to Skydive Greene County, Ohio, Inc. to Plaintiff in her capacity as trustee of the 2018 Trust. *Id*. at 110.

As the new trustee of the 2018 Trust, Plaintiff placed an advertisement in May 2018 on "Beech 18 Facebook group, a web site dedicated to owners and operators of Beech 18 aircraft[,]" for numerous pieces of equipment from Skydive Greene County, Ohio, Inc., including some of the equipment included in the Engines. (Doc. #38-14, *PageID* #267; Doc. #38-16, *PageID* #271).  On November 16, 2018, Defendant Dean Heimermann, who was a member of the Beech 18 Facebook group, visited J.R. West at Skydive Greene County, Ohio, Inc. to view the business's surplus equipment. (Doc. #1, *PageID* #4).  In addition to being a member of the Beech 18 Facebook group, Mr. Heimermann had a collegial relationship with J.R. West dating back over twenty years and was the sole owner and operator of a company that also utilized a variety of aircraft, Country Side Aviation, LLC. (Doc. #38, *PageID* #s 239, 246).  After viewing the equipment, Mr. Heimermann and Country Side Aviation, LLC (collectively, "Defendants") purchased the Engines from J.R. West for $3,500. (Doc. #1, *PageID* #4).

Shortly thereafter, Plaintiff learned of the transaction and reached out to Mr. Heimermann to rescind the transaction. (Doc. #1, *PageID* #s 4, 7; Doc. #38-14, *PageID* #268). About a month later, Defendants' counsel rejected Plaintiff's offer.  (Doc. #1, *PageID* #s 4, 8).  As a result of this rejection, Plaintiff filed this action seeking rescission of the November 16, 2018 transaction on the basis that it should be found "*void ab initio* as J.R. West had transferred his interest in [the Engines] to Plaintiff Kelly L. West as Trustee of the [2018 Trust]."  (Doc. #1, *PageID* #5).  Plaintiff also

3

argued that the transaction should be rescinded on the basis that it should be found "*void ab initio* as J.R. West lacked the mental capacity to engage in a bargain for [the Engines] on November [16], 2018." *Id.* Finally, Plaintiff alleged that recission was warranted on the basis that Defendants took "unconscionable advantage of the deteriorated mental condition of J.R. West in procuring possession and control of [the Engines] having provided grossly inadequate consideration for the lawful transfer of title of these tangible items to such a degree to be evidence of fraud." *Id.* In the alternative, Plaintiff requested that she be awarded damages in the amount of $129,000 plus reasonable attorney fees, costs of suit, and any other legal or equitable relief. *Id.* at 6. The case proceeded through more than a year of discovery, at the conclusion of which Defendants filed the instant Motion for Summary Judgment.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Additionally, this initial burden may be satisfied by the moving party "pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Barnhart v. Pickrel Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1389 (6th Cir. 1993).

The burden then shifts to the non-moving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

4

(quoting Fed. R. Civ. P. 56(e)). Here, in opposing summary judgment, the non-moving party cannot "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). Indeed, unverified pleadings and self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr*., 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, D.J.).

Additionally, at this stage, it is not the court's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255; *Tolan v. Cotton,* 572 U.S. 650, 660 (2014). In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the non-moving party and draw all reasonable inferences in that party's favor. *Id*. at 255; *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587. However, the "mere existence of a scintilla of evidence in support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis,* 57 F. 3d 476, 479 (6th Cir. 1995); *see also Anderson*, 477 U.S. at 252.

Finally, in ruling on a motion for summary judgment, the court is "not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. *See id*.

## III. DISCUSSION

5

In their Motion for Summary Judgment, Defendants request that Plaintiff's claims be dismissed in their entirety due to her failure to produce expert testimony indispensable to proving her claims. (Doc. #23). In support of their request, Defendants point out that Plaintiff's Complaint seeks to void the November 16, 2018 transaction on the basis that J.R. West did not have the right under the 2018 Trust to sell the Engines and/or that he lacked the requisite mental competency to sell the Engines. (Doc. #23, *PageID* #60; Doc. #44, *PageID* #s 419-22). Given that the terms of the 2018 Trust permit J.R. West to withdraw property from the trust estate at any time provided he is not "under a disability," Defendants argue that J.R. West's ability to sell the Engines under the 2018 Trust require a functionally identical finding to Plaintiff's other claims, *i.e.*, that J.R. West was mentally incompetent at the time of the November 16, 2018 transaction. *Id*. According to Defendants, the issue of whether J.R. West was "under a disability" or "mentally incompetent" is a complex medical determination for which expert testimony is required. (Doc. #23, *PageID* #s 60-65). Although Plaintiff disclosed two of J.R. West's treating physicians as potential expert witnesses in this case, Defendants maintain that such disclosures were patently deficient, thus warranting exclusion. *Id*. Without this critical expert testimony, Plaintiff is unable to carry her burden as a matter of law. *Id*. at 60-72.

In response, Plaintiff denies that it is her burden to prove that J.R. West was mentally incompetent. (Doc. #38, *PageID* #235). Instead, she alleges that she may still seek the relief sought in her Complaint by proving that "1) Defendants did not deal with the person authorized to sell the engine cores and parts to Defendants, or 2) Defendants engaged in constructive fraud to accomplish the transaction." *Id.* Specifically, Plaintiff argues that J.R. West was not authorized to sell the Engines under the 2018 Trust because he was "under a disability," which she believes should have the meaning set forth under the American with Disabilities Act, 42 U.S.C. § 12101 *et*

*seq.* ("the ADA"). *Id.* at 243. Alternatively, Plaintiff contends that Defendants engaged in constructive fraud to obtain the Engines. *Id.* at 244-49.

Given the somewhat bizarre and incongruent response provided by Plaintiff in her Memorandum in Opposition to Defendants' Motion for Summary Judgment, it is necessary to review what is and is not in dispute in this case. Despite being the primary basis underlying the claims in her Complaint, Plaintiff appears to abandon her claim that J.R. West was mentally incompetent at the time of the November 2018 transaction, opting instead to argue that J.R. West had no authority under the 2018 Trust because he was "under a disability" (which she interprets to mean something different than mental incompetency). As a result, Plaintiff does not provide any response whatsoever to Defendants' arguments that expert testimony is required to demonstrate mental incompetency or that Plaintiff's proposed experts were insufficiently disclosed. Accordingly, Plaintiff's lack of response on these issues should be deemed as waiver of any responsive argument. *See Humphrey v. U.S. Att'y Gen.'s Office,* 279 Fed. App'x. 328, 331 (6th Cir. 2008) ("[W]here, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived.").[3] However, given the intertwined nature of the issues related to J.R. West's mental capacity to contract and his authority to withdraw property under the terms of the 2018 Trust, the Court will still consider these arguments in tandem.

With that being said, the Court will not entertain Plaintiff's new arguments regarding a claim of constructive fraud. While not the model of clarity, Plaintiff's Complaint can in no way be

---

[3] *See also Gray v. Astr*ue, 4:09–CV–01468, 2010 WL 2106200 (N.D. Ohio Mar. 31, 2010) *report and recommendation adopted sub nom. Gray v. Comm'r of Soc. Sec.*, 4:09CV1468, 2010 WL 2106196 (N.D. Ohio May 25, 2010) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.")).

construed as supporting a claim for constructive fraud. The Federal Rules of Civil Procedure provide that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed. R. Civ. P. 8(a)(2). While Rule 8 "does not require 'detailed factual allegations' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Additionally, when pleading fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). As pointed out by Defendants, Plaintiff's Complaint does not even use the phrase "constructive fraud," let alone set forth an adequate factual basis to put them on notice of such a claim. As a result, the Court will not allow Plaintiff to attempt to re-write her Complaint in the eleventh hour. Instead, the only claims that will be considered are, as summarized above, Plaintiff's claims for recission or damages for the sale of the Engines based on J.R. West's lack of mental competency and/or lack of authority to sell the Engines under the 2018 Trust.

### A.   J.R. West's Authority to Withdraw Property from the Trust Estate

As noted previously, Plaintiff's Complaint alleges that the November 2018 transaction should be declared void as J.R. West did not have authority to sell the Engines under the 2018 Trust. (Doc. #1, *PageID* #5; Doc. # 38, *PageID* #s 235, 243-44). Section 2.3 of the 2018 Trust states that "[p]rovided the Grantor [J.R. West] is not under a disability, Grantor [J.R. West] shall have the right to withdraw and property in the trust estate at any time and from time to time." (Doc. #26-2, *PageID* #105). Thus, as conceded by both parties, J.R. West's authority to withdraw property from the trust estate hinges on the determination of whether he was "under a disability"

8

according to the 2018 Trust. (*See* Doc. #23, *PageID* #60; Doc. #38, *PageID* #243; Doc. #44, *PageID* #s 420-22).  The 2018 Trust, however, fails to define "disability," and the parties each proffer their own competing definitions for the term.

Acknowledging the 2018 Trust's silence on the term, Plaintiff insists that "disability" should be defined as it is under the ADA, meaning that J.R. West would be considered "under a disability" if he has (A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or (C) is regarded as having such an impairment. 42 U.S.C. § 12102(1).  (Doc. #38, *PageID* #242).  In contrast, Defendants contend that "disability" should have a much narrower meaning and be considered the functional equivalent of mental competency.  (Doc. #23, *PageID* #60; Doc. #44, *PageID* #s 420-22).

Under Ohio law, it is well-settled that the interpretation of a trust is a question of law for the court.  *Arnott v. Arnott*, 972 N.E.2d 586, 589 (Ohio 2012). In interpreting a trust, the role of the court is "to effectuate, within the legal parameters established by a court or by statute, the settlor's intent." *Id*. (quoting *Domo v. McCarthy*, 612 N.E.2d 706, paragraph one of the syllabus (Ohio 1993)).  Thus, "[i]nterpreting a trust is akin to interpreting a contract[,]" and the court must "ascertain and give effect to the intent of the parties." *Id.* (citing *Saunders v. Mortensen*, 801 N.E.2d 452 (Ohio 2004)).  This intent should be discerned "by considering the language used in the trust, reading all the provisions of the trust together and 'in light of the applicable law, and circumstances surrounding the [trust's] execution.'" *KeyBank Nat'l Ass'n v. Firestone*, 140 N.E.3d 1019, 1024 (Ohio Ct. App. 2019) (quoting *Cent. Trust Co. of N. Ohio, N.A. v. Smith*, 553 N.E.2d 265 (Ohio 1990).  Here, when the content of the instrument is unambiguous, the settlor's intent is derived from the plain language used, based on their common, ordinary meaning. *Id*. (internal citations omitted). However, if ambiguity exists or the or the settlor's intent is unclear, a court may

look to extrinsic evidence to determine such intent. *McDonald & Co. Sec., Gradison Div. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 747 N.E.2d 843, 847 (Ohio Ct. App. 2000).

As noted above, the disputed language in the 2018 Trust is contained in Section 2.3, which states that "[p]rovided the Grantor [J.R. West] is not under a disability, Grantor [J.R. West] shall have the right to withdraw any property in the trust estate at any time and from time to time." (Doc. #26-2, *PageID* #105). Based on the express terms of the 2018 Trust, it is clear that, as grantor, J.R. West, included Section 2.3 in order to reserve his rights to the property in the trust estate. Indeed, in reserving this right, J.R. West specified that he could withdraw such property "at any time and from time to time," which implies that he intended to maximize his ability to withdraw such property by not subjecting it to a set of prerequisites, such as approval by the trustee or beneficiaries. In fact, the only condition that inhibited his ability to withdraw property from the trust estate was whether he was "under a disability." Thus, this indicates that J.R. West intended only a limited set of circumstances under which he would be precluded from withdrawing property from the trust estate.

Under Plaintiff's interpretation, J.R. West would be precluded from withdrawing property from the trust estate in a wide array of circumstances. To reiterate, Plaintiff's interpretation provides that J.R. West would be considered to be "under a disability" if he has (A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or (C) is regarded as having such an impairment. Accordingly, if J.R. West were to have a physical impairment that confined him to a wheelchair, he would be considered "under a disability." In such a situation, it would make no difference that J.R. West retained his mental acuity or that he could adequately manage his business affairs. Instead, the determinative issue of whether he could withdraw property from the 2018 Trust would be dependent on the fact that he

10

had a physical impairment causing him to be confined to a wheelchair, thereby substantially limiting one or major life activities.

The undersigned finds no evidence in the 2018 Trust or otherwise presented by the parties to suggest that J.R. West intended such an illogical result. Rather, as set forth above, the express terms of the 2018 Trust indicate that J.R. West intended to retain his right to withdraw property to the greatest extent possible. Accepting Plaintiff's interpretation would unduly constrain J.R. West's ability to withdraw property from the 2018 Trust, a finding which is not supported by the terms of the 2018 Trust or the record.

In contrast, Defendants advocate for a much more limited interpretation of "under a disability," which would serve to equate the term with mental competency. As noted above, Ohio trust law provides that the intent of the settlor/grantor should be ascertained not only by the language used in the instrument, but also "'in light of the applicable law, and circumstances surrounding the [trust's] execution.'" *KeyBank Nat'l Ass'n*, 140 N.E.3d at 1024. Thus, reviewing applicable Ohio law on mental competency is necessary to determine whether such a definition would best effectuate J.R. West's intent.

Under Ohio law, "[a]n individual who has not been adjudicated as mentally incompetent in a court of law is presumed to be in fact competent." *Buzzard v. Pub. Emp. Ret. Sys. of Ohio*, 745 N.E.2d 442, 445 (Ohio Ct. App. 2000) (internal citation omitted). In light of this presumption, a party seeking to void a contract must prove by "clear and convincing evidence" that the individual was incompetent to contract at the time of the agreement. *DiPietro v. DiPietro*, 460 N.E.2d 657, 661 (Ohio Ct. App. 1983). Ascertaining whether an individual is competent to contract requires one to determine "whether the powers of a person's mind have been so affected as to destroy the ability to understand the nature of the act in which he is engaged, its scope and effect or its nature

11

and consequences." *Davis v. Marshall*, No. 94APE02-158, 1994 WL 425169, at *3 (Ohio Ct. App. Aug. 9, 1994) (internal citation omitted). Thus, if an individual understood the nature of the transaction and the effects of his own actions, he is considered mentally competent to contract. *Giurbino v. Giurbino*, 626 N.E.2d 1017 (Ohio Ct. App. 1993) (internal citations omitted).

Additionally, in cases where the contract involves or implicates assets that would otherwise be subject to a testamentary disposition, Ohio courts have also considered the analogous test of testamentary capacity. *See e.g.*, *Giurbino*, 626 N.E.2d at 1026 (applying the tests for both contractual capacity and testamentary capacity in order to determine whether a decedent possessed the mental capacity to create a contract for a payable-on-death account as such an account provides a vehicle for a person to make dispositions like those made under a will); *Filo v. Filo*, 2021-Ohio-413, ¶¶ 16-20, 2021 WL 568453 (Ohio Ct. App. 2021) (holding that the end result would be the same regardless of whether the test for testamentary or contractual capacity was used in determining whether an individual had capacity to execute a power of appointment.). The test for testamentary capacity, in turn, is whether an individual has sufficient mind and memory (1) to understand the nature of the business in which he is engaged, (2) to comprehend generally the nature and extent of his property, (3) to hold in his mind the names and identities of those who had natural claims upon his bounty, and (4) to be able to appreciate his relation to members of his family. *Giurbino*, 626 N.E.2d at 1026.

Based on the foregoing review of applicable Ohio law, equating "under a disability" with "mental competency," would serve to restrict J.R. West from withdrawing property from the 2018 Trust if he were unable to understand the nature of the transaction and the effects of his own actions. Additionally, given that the property in the 2018 Trust would otherwise be subject to a testamentary disposition, Ohio law indicates that a finding of mental competency in such a

situation would involve assessing J.R. West's testamentary capacity. In other words, in withdrawing property from the trust estate, J.R. West would have to be found to have sufficient mind and memory to understand that he is removing property that would otherwise be bequeathed to his daughter, Plaintiff, following his death. In short, Defendants' interpretation of "under a disability" creates a much more limited and logical means of restricting J.R. West's reserved power, thus effectuating J.R. West's intent.

Finally, equating "under a disability" with mental capacity would also reflect the surrounding circumstances of the 2018 Trust. As alleged in Plaintiff's affidavit, the execution of the 2018 Trust was prompted by J.R. West's increasing episodes of memory loss and desire to have Plaintiff take over business operations as successor trustee. Thus, the surrounding circumstances of J.R. West's concern regarding his mental acuity inform and support a finding that he intended to limit his ability to withdraw property from the trust estate based on the status of his mental capacity as opposed to any physical or mental impairment that would substantially limit his life activities.

In considering these two competing definitions, the undersigned finds that the grantor's intent is best effectuated by Defendants' interpretation. The express terms of Section 2.3 indicate that J.R. West intended to reserve his right to withdraw property from the trust estate to the maximum extent possible, subject only to a finding that he is under a disability. A review of applicable Ohio law on mental capacity and the surrounding circumstances also supports Defendants' interpretation and the intent to not unduly constrain the rights J.R. West reserved for himself. Plaintiff's interpretation, on the other hand, would serve to preclude J.R. West from exercising this right in circumstances that appear to be inconsistent with his intent. Accordingly,

the undersigned finds that, in the context of Section 2.3 of the 2018 Trust, "under a disability" should be interpreted to be consistent with Ohio law on mental capacity.

### B.     Necessity of Expert Testimony on J.R. West's Disability

Having found that "under disability" should be interpreted under the 2018 Trust to be the functional equivalent of mental capacity under Ohio law, the inquiry now turns to whether J.R. West lacked the mental capacity to withdraw the Engines from the trust estate and sell them to Defendants in November 2018. While such a question would typically be an issue of fact, Defendants maintain that Plaintiff has failed to put forth sufficient expert evidence and, therefore, cannot prove that J.R. West was under a disability as a matter of law.  Specifically, Defendants contend that the issue of mental capacity is a complex medical determination for which expert testimony is required and that Plaintiff has not sufficiently disclosed her experts in this case.

Before assessing whether Plaintiff, in fact, insufficiently disclosed her experts in this case, the Court will first determine whether Plaintiff's claims require expert testimony.

The applicable evidentiary rules provide that expert testimony may be appropriate when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  In contrast, lay testimony is limited to opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) **not** based on scientific technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701 (emphasis added).

Moreover, in Ohio, "when an issue involves a question of scientific inquiry that is not within the knowledge of a layperson, expert testimony is required." *Harris v. Ohio Dep't of Rehab. & Corr.*, 2013-Ohio-5714, 2013 WL 6843811 (Ohio Ct. App. 2013) (citing *Stacey v. Carnegie–*

14

*Illinois Steel Corp.*, 101 N.E.2d 897 (Ohio 1951). Specifically, the Supreme Court of Ohio has pronounced that "[u]nless a matter is within the comprehension of a layperson, expert testimony is necessary. [Ohio] Evid. R. 702 and 703. Experts have the knowledge, training and experience to enlighten the jury concerning the facts and their opinion regarding the acts." *Ramage v. Cent. Ohio Emergency Serv., Inc.,* 592 N.E.2d 828, 833 (Ohio 1992) (citing *McKay Machine Co. v. Rodman*, 228 N.E. 2d 304 (Ohio 1967)).

Thus, while the admission of expert testimony is an issue left to the discretion for the trial judge, Ohio courts have generally found that issues such as complex medical determinations, professional standards of care, and medical causation are outside the comprehension of a layperson, thus necessitating expert testimony. *See e.g.*, *Stacey,* 101 N.E.2d at 900 ("[I]f the issue relates to a causal connection between an injury and a subsequent physical condition which involves only a scientific inquiry, such causal connection must be established by the testimony of medical witnesses competent to testify on the subject[.]"); *Tunks v. Chrysler Grp., L.L.C.,* 2013-Ohio-5183, ¶ 18 (Ohio Ct. App. 2013) ("Where complicated medical problems are at issue, testimony from a qualified expert is necessary to establish a proximate causal relationship between the incident and the injury."); *Harris*, 2013-Ohio-5714, ¶ 17 (holding that expert testimony was necessary on the issues of breach and proximate cause in a case where the plaintiff alleged that he contracted MRSA from his haircut as these issues were outside the knowledge of a layperson).

In fact, the issue of medical competency is one such issue where Ohio courts have found that "[e]xpert testimony is critical." *Feight v. Brooks*, No. 2018 CV 01708, 2019 WL 11553363, at *12 (Ohio Com. Pl. Dec. 23, 2019) (reversed on other grounds) (citing *Washkewicz v. Seredick*, No. 49871, 1986 WL 633, at *6 (Ohio Ct. App. Jan. 2, 1986)). In so finding, these courts reason that "[t]he question of competency involves specialized, technical and difficult considerations[,]"

thus making the testimony of an expert "indispensable in coming to a conclusion regarding [an individual's] competency." *Washkewicz*, 1986 WL 633, at *6 (citing *McKay Mach. Co*., 228 N.E.2d 304; *see also Feight*, 2019 WL 11553363, at *12.

The undersigned is inclined to agree. As outlined above, Ohio law creates a rebuttable presumption that individuals are presumed mentally competent unless they have been adjudicated as mentally incompetent. *Buzzard*, 745 N.E.2d at 445. The tests for overcoming this presumption require evidence that go beyond the observations of a layperson and seek to determine whether the individual's mind has been so affected so as to destroy his ability to understand the nature of the act in which he is engaged as well as its scope and effect or its nature and consequences. *Davis*, No. 94APE02-158, 1994 WL 425169, at *3. Thus, in determining whether this presumption of mental capacity is overcome, the factfinder must be aided by a competent medical expert. *See Washkewicz*, 1986 WL 633, at *; *see also Feight*, 2019 WL 11553363, at *12. While such expert opinions would not be conclusive as a matter of law, the question of whether an individual has the mental capacity to enter into a contract or dispose of his property via a revocable trust is predicated on complex medical determinations for which expert medical testimony is indispensable. *See id*.

In reaching this conclusion, however, the undersigned does not hold that lay witnesses would be precluded from providing testimony relevant to the issue of mental capacity. On the contrary, if this case were to proceed to trial, lay witnesses would be permitted to testify as to their own perceptions of issues such as J.R. West's symptoms, conditions, and ability to manage affairs. They would not, however, be permitted to testify on issues related to mental capacity or legal conclusions as such issues involve scientific, technical, or other specialized knowledge. *See e.g., Shinnick v. Ram Kabir, LLC*, No. 5:15-CV-00160-TBR, 2016 WL 6909827, at *3 (W.D. Ky. Nov. 23, 2016) ("[W]hether an individual is 'competent,' 'suffers from depression,' or has a 'severe

16

mental condition' are the type of determinations having such medical and legal significance so as to make them improper under [Fed. R. Evid.] 701."); *Bishop v. Anderson*, No. 5:16-CV-128-TBR, 2018 WL 4494656, at *3 (W.D. Ky. Sept. 19, 2018) ("Medical conclusions and causation are beyond the scope of admissible lay witness testimony.") (internal citations omitted); *United States v. Holden*, 625 Fed. App'x 316, 318 (9th Cir. 2014) ("The court was reasonable in believing that testimony regarding medications and their effect on [the defendant's] mental capacity would be based on scientific knowledge outside the scope of [Fed. R. Evid.] 701.").

However, in the same vein, the evidence that a lay witness could provide from his or her own observations would not be sufficient to establish the elements necessary to prove mental incapacity. Indeed, Plaintiff's testimony that J.R. West was having trouble remembering things is insufficient to permit the inference that he was "under a disability" or lacked the requisite mental capacity to withdraw the Engines from the 2018 Trust and sell them to Defendants. *See e.g., Webb v. Betty S. Anderson Children Trust*, 160 N.E.3d 804 (Ohio Ct. App. 2020) ("Evidence that a person had dementia is insufficient by itself to establish the person's lack of testamentary capacity; there must be evidence that dementia actually affected the person's capacity to make the testamentary disposition."); *In re Estate of Marsh,* 2nd Dist. Greene No. 2010 CA 78, 2011-Ohio-5554, ¶ 34 (Ohio Ct. App. 2010) ("Even accepting the evidence of [the testator's] dementia/Alzheimer's as true, 'it is not enough to show that the testator had Alzheimer's disease, even if the Alzheimer's disease existed at the time the will was executed. The plaintiff must also show that Alzheimer's disease affected the testator's capacity to execute the will.'") (quoting *In re Estate of Goehring,* Columbiana App. Nos. 05 CO 27, 05 CO 35, 2007–Ohio–1133, ¶ 54) (Ohio Ct. App. 2007)). At best, such a finding would require the impermissible stacking of inference upon inference. *See McDougall v. Glenn Cartage Co.*, 160 N.E.2d 266 (Ohio 1959) ("an inference

17

can not be predicated upon a fact the existence of which rests on another inference"). This Court will not presume or infer the elements necessary to establish contractual or testamentary capacity from guess or speculation.

For these reasons, the Court finds that expert testimony is indispensable to Plaintiff's claims that the November 2018 transaction should be voided because J.R. West lacked the capacity to contract or that he had no rights to the Engines under the 2018 Trust because he was "under a disability."

### C. Sufficiency of Plaintiff's Expert Witness Disclosures

Since expert testimony is required to prove essential elements of her claims, the question remains whether Plaintiff adequately disclosed her proposed expert witnesses, Latha Venkatesh, M.D., and Anonela Svetic, M.D. In their Motion for Summary Judgment, Defendants argue that Plaintiff did not comply with the Federal Rules of Civil Procedure when naming J.R. West's treating physicians, Drs. Venkatesh and Svetic, in her expert disclosures. (Doc. #23, *PageID* #s 65-69). According to Defendants, Drs. Venkatesh and Svetic fall within the category of experts for which written expert reports are required. *Id*. at 66. Since Plaintiff did not provide a written expert report for either of these doctors, Defendants contend that Drs. Venkatesh and Svetic should be precluded from offering expert testimony on J.R. West's mental capacity. *Id*. Defendants also point out that Plaintiff's expert disclosures are insufficient, even if the Court considers them to be experts that are not required to provide expert reports, as the disclosures provided by Plaintiff "failed to provide 'a summary of the facts and opinions' to which Dr. Venkatesh or Dr. Svetic are expected to testify." *Id*. at 67 (quoting Fed. R. Civ. P. 26(a)(2)(C)). As such, Defendants maintain that the remedy for these insufficient disclosures is to preclude Drs. Venkatesh and Svetic from

offering expert testimony at trial. *Id*. at 68. Plaintiff does not address any of these arguments in her Memorandum in Opposition.

The requirements for expert witness disclosures are governed by Federal Rule of Civil Procedure 26. Rule 26 provides for two categories of experts, each with their own reporting requirements. *See* Fed. R. Civ. P. 26(a)(2)(B), (C). Under the first category specified in Rule 26(a)(2)(B), the expert must provide a written report if the expert was "retained or employed specially to provide testimony or one whose duties as the party's employee regularly involve giving expert testimony." In contrast, under the second category outlined in Rule 26(a)(2)(C), the expert does not need to provide a written report, but the disclosure must state "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii).

According to the Advisory Committee's Note, Subdivision (a)(2)(C) was added to Rule 26 in order to "resolve[] a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement." Fed. R. Civ. P. 26(a)(2)(C) Advisory Committee's Note (2010 Amendments). The Note goes on to distinguish the reporting requirements under Rule 26(a)(2)(B) from Rule 26(a)(2)(C) by explaining that Rule 26(a)(2)(C) "disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B). Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." *Id*.

In this case, there is no need to determine whether Plaintiff should have produced written expert reports pursuant to Rule 26(a)(2)(B) with her disclosures of Drs. Venkatesh and Svetic as she failed to even comply with the less extensive requirements of Rule 26(a)(2)(C). Indeed, in

Plaintiff's Second Amended Designation of Expert Witnesses, she identified two of J.R. West's treating physicians as expert witnesses by simply stating:

> Plaintiff Kelly L. West hereby provides notice of her following disclosures:
>
> A. Latha Venkatesh, M.D.
>    386 North Detroit Street, Xenia, Ohio 45385
>    Physical and mental condition of James R. West, historically and at the time Dean Heimermann acquired engines and parts.
>
> B. Anonela Svetic, M.D.
>    3572 Dayton Xenia Road, Beavercreek, Ohio 45432
>    Physical and mental condition of James R. West, historically and at the time Dean Heimermann acquired engines and parts.

(Doc. #26-3, *PageID* #111).

In response, Defendants contend that these "barebones statements[s] do[] not summarize any facts or opinions" and, therefore, fail to comply with Rule 26(a)(2)(C). (Doc. #23, *PageID* #67). Defendants' argument is well-taken. As outlined above, while less extensive than the requirements for experts retained or specially employed under Rule 26(a)(2)(B), a party disclosing an expert under Rule 26(a)(2)(C) must state (1) "the subject matter" of the testimony; and (2) "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii). Further, Rule 26(a)(2)(C) does "not permit a [p]laintiff to dump medical records on the defendant, nor do they eliminate the requirement of providing summary disclosures." *Ogle v. Koorsen Fire & Sec., Inc.,* 336 F. Supp. 3d 874, 877 (S.D. Ohio 2018) (Newman, M.J) (quoting *Gleed v. AT & T Servs., Inc.*, No. 13-12479, 2016 WL 1451532, at *2 (E.D. Mich. Apr. 12, 2016) (internal quotation marks omitted)). On the contrary, when reviewing whether a disclosing party has satisfied the second "summary of facts and opinions" prong of the disclosure requirement under Rule 26(a)(2)(C), this court has previously explained that a "mere statement of the topics of the opinions is insufficient." *Little Hocking Water Ass'n, Inc. v. E.I.*

20

*DuPont de Nemours & Co.,* No. 2:09-CV-1081, 2015 WL 1105840, at *9 (S.D. Ohio Mar. 11, 2015) (Marbley, D.J.). Instead, to satisfy this prong, the "opinions must state a view or judgment regarding a matter that affects the outcome of the case." *Id. See also Ogle*, 336 F. Supp. 3d at 879 ("With regard to experts not retained or specially employed to provide expert testimony in a case, *e.g.*, treating doctors, the mere disclosure of the expert's identity is insufficient.").

While Plaintiff's disclosures may have complied with the "subject matter" prong of Rule 26(a)(2)(C), they completely ignore the second prong requiring a "summary of the facts and opinions" to be offered by the identified experts. Indeed, simply stating that Drs. Venkatesh and Svetic will offer testimony regarding the "[p]hysical and mental condition of James R. West, historically and at the time Dean Heimermann acquired engines and parts" fails to indicate any view or judgment to be expressed by the experts on this topic. In the absence of this information, Defendants are left to guess at what the physicians' testimony would be and whether they should procure their own rebuttal expert testimony. Further, even if such information was otherwise present in the medical records exchanged in discovery, this would not relieve Plaintiff of her obligation to make the required expert disclosures. *Ogle*, 336 F. Supp. 3d at 880; *accord Cosby v. Claiborne County Bd. of Educ.*, No. 3:17-CV-278-RLJ-HBG, 2018 WL 3233336, at *3 (E.D. Tenn. July 2, 2018) (holding that "the requirement to provide a disclosure of Rule 26(a)(2)(C) would be eviscerated[]" if mere access to the information contained in exchanged medical records were deemed to be a sufficient disclosure.). Simply put, the Court finds that, in failing to disclose the views or judgments to be expressed by Drs. Venkatesh and Svetic, Plaintiff's expert disclosures were deficient as a matter of law. Accordingly, the Court will now address the appropriate sanction for Plaintiff's violation of Rule 26(a)(2)(C).

### D. Appropriate Sanction for Failure to Properly Disclose Expert Witnesses

21

Having found that Plaintiff's expert disclosures of Drs. Venkatesh and Svetic were deficient, the inquiry now turns to the appropriate sanction for this failure. Defendants urge the Court to preclude all expert testimony offered by Drs. Venkatesh and Svetic.  Plaintiff fails to address Defendants' arguments regarding her deficient disclosures or provide any justification for the deficiencies.

The sanction for failing to comply with Federal Rule of Civil Procedure 26(a) is clearly articulated in Federal Rule of Civil Procedure 37.  In particular, Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Indeed, "Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'" *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271-72 (6th Cir. 2010) (quoting *Roberts v. Galen of Virginia, Inc.,* 325 F.3d 776, 782 (6th Cir. 2003)).  Thus, in order to avail itself of a sanction less severe than Rule 37(c)(1)'s default sanction of complete exclusion, the potentially sanctioned party bears the burden of proving harmlessness or substantial justification for the deficiencies.  *EQT Prod. Co. v. Phillips*, 767 Fed. Appx. 626, 634 (6th Cir 2019) (citing *R.C. Olmstead, Inc*., 606 F.3d at 271-272).

In assessing whether a party's deficient disclosure is "substantially justified" or "harmless," the Sixth Circuit has identified five factors to consider: "'(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the

22

evidence.'" *Howe v. City of Akron*, 801 F.3d 718, 747-48 (6th Cir. 2015) (quoting *Russell v. Abs. Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)).

In addition to her failure to address the need for expert testimony and her failure to address the sufficiency of her expert disclosures, Plaintiff also failed to address whether her deficient disclosures were harmless or substantially justified. However, in the interest of justice, the Court will weigh these factors to ensure that the appropriate sanction is imposed.

In this case, Defendants could not be surprised to find that J.R. West's treating physicians were identified as potential expert witnesses as the central dispute in this case concerns J. R. West's mental competency. Nonetheless, Defendants would likely be surprised to learn of these physicians' opinions at trial given Plaintiff's failure to provide the required summaries of such opinions as required by Rule 26(a)(2)(C). For instance, while it seems reasonable to assume that experts identified by Plaintiff would testify in support of Plaintiff's position, *i.e.*, that J.R. West was not mentally competent to contract with Mr. Heimermann on November 16, 2018, the only evidence expressly addressing J.R. West's competency in the medical records was Dr. Venkatesh's March 1, 2018 letter stating that "[i]t is my medical opinion that James West needs a living will and he is competent to execute the living will." (Doc. #26-5, *PageID* #134).[4] Accordingly, if Dr. Venkatesh were to testify that J.R. West was not competent to contract with Mr. Heimermann on November 16, 2018, it is reasonable that such an opinion would surprise Defendants. Notably, despite the extensive briefing that has occurred in this case, Plaintiff has yet to supplement her disclosures or provide any indication as to what opinions would be expressed by these experts.

---

[4] To the extent that there were other medical opinions by Dr. Venkatesh or Dr. Svetic expressly addressing J.R. West's mental competency, such opinions were not brought to the attention of the Court. In ruling on a motion for summary judgment, the court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp.*, 889 F.2d 108 at 111.

This, in turn, leads to Plaintiff's ability to cure the deficiency. Although Plaintiff could have cured these deficiencies by requesting time to supplement her deficient disclosures, Plaintiff has made no such request. Instead, she has ignored all allegations related to these deficiencies with seemingly no regard for Defendants' concerns or the Court's time. Additionally, re-opening discovery on this issue would likely prejudice Defendants' ability to obtain a rebuttal expert capable of assessing J.R. West's mental capacity at the time of the transaction, which is now three and a half years ago.

Allowing supplementation and re-opening discovery would also severely disrupt the Court's trial calendar. Both the discovery and dispositive motion deadlines have long since passed. The trial has already been postponed and rescheduled once. Ultimately, although this evidence is indispensable to the issues in this case and will result in a finding that Plaintiff is unable to carry her burden as a matter of law, Plaintiff's complete failure to offer a justification for her deficient disclosure weighs heavily in favor of excluding expert testimony from the treating physicians.

Accordingly, in weighing all of these factors, Plaintiff has not met her burden of showing that her failure to comply with Rule 26(a)(2) was substantially justified or harmless, meaning that any expert testimony by Drs. Venkatesh and Svetic must be excluded pursuant to Rule 37(c)(1). *See also EQT Prod. Co.*, 767 F. App'x at 634 (holding that the district court did not abuse its discretion in excluding an expert report under Rule 37 for failing to comply with Rule 26.). The Court understands the significant impact this decision will have on Plaintiff's case. However, based on the foregoing analysis, Plaintiff's failure to sufficiently disclose her experts necessitates precluding use of their testimony in this case. *See also* Rule 37(c)(1) (stating that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, a hearing, or at a trial").

24

Unfortunately, "clients must be held accountable for the acts and omissions of their attorneys[,]" who they freely select to represent them. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396, 113 S.Ct. 1489 (1993). Courts must be mindful not to excuse counsel's failures that disrupt the orderly flow of litigation merely because "counsel's unexcused conduct imposes and unjust penalty on the client." *Id*.

## IV. CONCLUSION

As outlined above, expert testimony is indispensable to Plaintiff's claims as alleged in her Complaint. Given that the only experts Plaintiff has identified as having the potential to provide testimony on this issue are precluded from testifying, Plaintiff is unable to prove essential elements of her claims as a matter of law.

For all the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. #22) is **GRANTED.** Plaintiff's Complaint (Doc. #1) is **DISMISSED WITH PREJUDICE**. This case shall be **TERMINATED** on the Court's docket.

**IT IS SO ORDERED.**

May 27, 2022                                    *s/Peter B. Silvain, Jr.*

                                                        Peter B. Silvain, Jr.
                                                        United States Magistrate Judge

25